# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ALFRED K. MYERS,                    :

       Plaintiff,                    :     Case No. 2:07-cv-844

    v.                    :     Judge Holschuh

DELAWARE COUNTY, OHIO, et al.,      :     Magistrate Judge Kemp

       Defendants.                    :

                    :

## MEMORANDUM OPINION & ORDER

Plaintiff, former Delaware County Sheriff Alfred K. Myers, filed suit against Delaware County, the Delaware County Board of Commissioners, Commissioners Kris Jordan, Glenn Evans, and James Ward, the Delaware County Sheriff's Office, and former Delaware County Sheriff Mark W. Wolfe. Plaintiff seeks relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. More specifically, Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment right to free speech, and deprived him of his Fourteenth Amendment due process rights. He also brings a state law claim of defamation. This matter is currently before the Court on Defendants' motion for partial judgment on the pleadings. (Record at 25).

## I.     Background and Procedural History

Plaintiff served as Sheriff of Delaware County, Ohio from 1993 until May 31, 2007 when he resigned after pleading guilty to criminal ethics charges involving receipt of improper off-duty compensation and selling county vehicles through a family member. He was sentenced on June 1, 2007 to 60 days of suspended jail time and fined $800. He was also ordered to perform

community service and was prohibited from holding public office for seven years.  Pursuant to Ohio Revised Code § 305.02(F), the Delaware County Board of Commissioners appointed Mark W. Wolfe to replace Plaintiff as Acting Sheriff.

There was a history of political tension between Plaintiff and Wolfe, and between Plaintiff and Commissioner James Ward.  In 1992, Ward unsuccessfully ran against Plaintiff for the position of Delaware County Sheriff.  In 2000 and again in 2004, Wolfe ran against Plaintiff for the same position.  Wolfe was openly backed by Commissioner Ward, but lost the election to Plaintiff, who argued that Wolfe lacked the necessary qualifications.

Wolfe held the position as Acting Sheriff for just one week.  The Delaware County Republican Central Committee screened several candidates, including Wolfe.  When Wolfe was questioned during his interview about a 2003 investigation into a complaint that Wolfe had mounted a video camera outside a neighbor's bedroom window, he denied the allegations and claimed that Sheriff Myers had a vendetta against him.  On June 5, 2007, the local newspaper reported that the Republican Central Committee had determined that Wolfe was not qualified and would not be considered as a permanent replacement for Sheriff.[1]

That same day, Wolfe found images of child pornography on the office computer previously used by Plaintiff.  On June 6, 2007, acting against the advice of the Delaware County Prosecutor, Wolfe issued a written press release detailing his "horrific discovery" and stating that an official investigation was being conducted.  The press release stated that "[i]t appears that the files located on this computer were <u>not</u> used in an investigatory nature."  (Ex. to Compl.).

---

[1]  The Committee ultimately selected Walter Davis to replace Plaintiff as Sheriff.  Davis was sworn in on June 7, 2007.

News of Wolfe's discovery was widely reported throughout the media.

The following day, the media received a copy of a 2003 memo written by Plaintiff indicating that the child pornography on his computer was related to an official investigation. Plaintiff contends that this memo was readily available and known to Wolfe before the press release was issued. On July 2, 2007, the media reported that the Ohio Bureau of Criminal Investigation had concluded that the child pornography found on the computer was, in fact, related to an official investigation Plaintiff had conducted in 2003.

On August 23, 2007, Plaintiff filed the instant action against Delaware County, the Delaware County Sheriff's Office, and the Delaware County Board of Commissioners. Plaintiff also sued Commissioners Kris Jordan and Glenn Evans in their official capacities, and sued Ward and Wolfe in their official and individual capacities. Count I of the Amended Complaint, brought pursuant to 42 U.S.C. § 1983, alleges that Defendants, while acting under color of state law, retaliated against Plaintiff for exercising his right to free speech under the First Amendment. Count II of the Amended Complaint also seeks relief under § 1983 and alleges that Defendants, acting under color of state law, violated Plaintiff's due process rights. Count III of the Amended Complaint asserts a state law claim of defamation. Count IV further alleges that Defendants acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Plaintiff seeks compensatory and punitive damages.

Defendants have moved for partial judgment on the pleadings. With respect to Count II of the Amended Complaint, the § 1983 due process claim, Defendants contend that Plaintiff has failed to state a claim upon which relief can be granted. As to the claims brought against Defendant Ward in his individual capacity, Ward argues that he is entitled to absolute legislative

immunity. Defendants Ward and Wolfe argue that they are entitled to qualified immunity on the claims brought against them in their individual capacities. Defendants also urge the Court to decline to exercise supplemental jurisdiction over the state law claims.

## II.    Standard of Review

Motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) are evaluated in much the same way as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. See Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998); Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 511-12 (6th Cir. 2001); Mixon v. Ohio, 193 F.3d 389, 399-400 (6th Cir. 1999). The purpose of a motion under either rule is to test the sufficiency of the complaint. A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

When considering a motion for judgment on the pleadings, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true, but it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Grindstaff, 133 F.3d at 421. The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. See Fitzke v. Shappell, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

The Court will grant a motion for judgment on the pleadings if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. Little v. UNUM Provident Corp., 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

## III.    Discussion

In Count II of the Amended Complaint, Plaintiff seeks relief under 42 U.S.C. § 1983 for alleged violations of his constitutional due process rights. That statute states in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. This statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)). In order to recover under § 1983, a plaintiff must prove that the defendant, while acting under color of state law, violated rights secured by the Constitution or laws of the United States. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

Plaintiff alleges that Defendants, while acting under color of state law, violated "the due process rights guaranteed Plaintiff under the Fourth Amendment to the Constitution of the United States as applicable through the 14th Amendment to the Constitution of the United

States." (Am. Compl. ¶ 39.)[2]  Plaintiff alleges that, by issuing the press release, Defendants altered his legal status and infringed on his inalienable right to enjoy life and liberty and to seek and obtain happiness and safety as guaranteed by Article I, Section 1.01 of the Ohio Constitution.  Plaintiff contends that, because of Defendants' conduct, it is unlikely that he will ever again be able to serve in public office or to work in private law enforcement.  He also contends that the appointment of Wolfe as Sheriff was "done with the intent and purpose of depriving Plaintiff of his due process rights of liberty and property."  (Id. at ¶ 43.)  Plaintiff further alleges that his reputation and earning capacity have been permanently damaged, and that the shame and ridicule has caused him serious emotional distress.

Defendants have moved to dismiss Plaintiff's due process claim, arguing that he has failed to state a claim upon which relief can be granted because he has failed to allege the deprivation of any constitutionally-protected interest.  Defendants also argue that Plaintiff's due process claim is barred by Parratt v. Taylor, 451 U.S. 527 (1981).

In addition, Defendant Ward argues that he is entitled to absolute legislative immunity on the claims brought against him in his individual capacity.[3]  Defendants Wolfe and Ward also

---

[2]  Plaintiff's citation to the Fourth Amendment is very puzzling since he alleges no facts to support a claim of an unlawful search or seizure, and the Fourth Amendment contains no due process guarantees.  The Court construes Count II as an alleged violation of the Due Process Clause of the Fourteenth Amendment.

[3]  As the Supreme Court noted in Kentucky v. Graham, 473 U.S. 159 (1985), a claim brought against a government employee in his *individual* capacity seeks to hold the employee personally liable for actions taken under color of state law.  However, a claim brought against a government employee in his *official* capacity is the equivalent of a claim brought against the governmental entity itself.  Id. at 165.

argue that they are entitled to qualified immunity on the due process claims brought against them in their individual capacities.  Finally, Defendants argue that, with respect to the claims brought against the governmental entities and against the individual defendants in their official capacities, Plaintiff has failed to state a claim upon which relief can be granted.  Before addressing these other arguments, the Court turns first to the due process claims.

**A.      Due Process Claims**

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no State shall "deprive any person of life, liberty or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause has procedural and substantive components.  Plaintiff alleges that Defendants' conduct violated both.  As the Sixth Circuit explained in Howard v. Grinage, 82 F.3d 1343, 1350 (6th Cir. 1996), "substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards."

**1.      Procedural Due Process**

The Court turns first to Plaintiff's procedural due process claims.  The procedural component of the Due Process Clause protects rights created by state law and guarantees that no significant deprivation of life, liberty or property will take place until notice has been provided and the individual has a meaningful opportunity to be heard.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).  In Kentucky Department of Corrections v. Thompson, 490 U.S. 454 (1989), the United States Supreme Court stated:

> We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972); the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient, <u>Hewitt v. Helms</u>, 459 U.S. at 472, 103 S.Ct. at 871. The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," <u>Board of Regents v. Roth</u>, 408 U.S., at 577, 92 S.Ct., at 2709, and must be based on more than "a unilateral hope," <u>Connecticut Board of Pardons v. Dumschat</u>, 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.

<u>Thompson</u>, 490 U.S. at 460.

The threshold issue in assessing a procedural due process claim is whether the state actor has interfered with a protected interest in liberty or property. Standing alone, damage to reputation does not implicate any property or liberty interests sufficient to invoke the procedural protections of the Due Process Clause. <u>See</u> <u>Siegert v. Gilley</u>, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."). As the Sixth Circuit explained in <u>Doe v. Michigan Department of State Police</u>, 490 F.3d 491 (6th Cir. 2007), a successful plaintiff must satisfy the "stigma-plus" test set forth by the Supreme Court in <u>Paul v. Davis</u>, 424 U.S. 693 (1976). The plaintiff must "show that the state's action both damaged his or her reputation (the stigma) and that it 'deprived [him or her] of a right previously held under state law' (the plus)." <u>Doe</u>, 490 F.3d at 502 (<u>quoting</u> <u>Paul</u>, 424 U.S. at 708).

The facts in <u>Paul</u> were as follows. Even though Edward Davis had pled not guilty to a charge of shoplifting and that charge had never been resolved, his name and photograph were

included on a police flyer listing "active shoplifters." The flyer was distributed to local

merchants by the police. When Davis's employer saw the flyer, he did not fire Davis but told

him that he "had best not find himself in a similar situation" in the future. Davis sued the police

under § 1983 for violations of his due process rights. He alleged, in part, that defendants'

conduct would seriously impair his future employment opportunities. Although the Court

recognized the stigma that resulted from the alleged defamation, it held that, standing alone, an

interest in reputation was not a protected liberty or property interest. Davis had to also establish

that a "right or status previously recognized by state law was distinctly altered or extinguished."

Paul, 424 U.S. at 711. Davis, who had suffered no immediate adverse consequences as a result

of the defamation, failed to make this showing.

Like Davis, Plaintiff in the instant case has clearly asserted damage to his reputation.

However, even viewing the Amended Complaint in a light most favorable to him and accepting

all well-pleaded allegations as true, Plaintiff, like Davis, has failed to adequately allege that

Defendants' conduct interfered with a protected property or liberty interest.

### a.     Property Interest

Citing State ex rel. Trago v. Evans, 166 Ohio St. 269, 141 N.E.2d 665, Syl. ¶ 1 (Ohio

1957), Defendants argue that Plaintiff has no property interest in holding public office. In the

alternative, Defendants argue that the allegedly defamatory press release could not have deprived

Plaintiff of any property right in his position as Sheriff since Plaintiff had resigned due to

unrelated criminal ethics violations almost a week before the press release was issued.

Plaintiff appears to concede that he has no protected property interest in holding public

office, now or in the future. In his memorandum in opposition, he argues only that Defendants'

conduct impaired his right to contract, under Ohio law, as a private investigator. He notes that he cannot work as a private investigator without a license, and that he cannot obtain a license unless he has "a good reputation for integrity." Ohio Revised Code § 4749.03(A)(1)(a). He contends that the stigma of being branded a "child pornographer" will prevent him from obtaining a license as a private investigator.

The alleged right to obtain a private investigator's license and to contract with third parties *at some time in the future*, however, is not a protected property interest. As the Supreme Court held in <u>Board of Regents v. Roth</u>, 408 U.S. 564 (1972), "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person *has already acquired*." <u>Id.</u> at 576 (emphasis added). Plaintiff had no private investigator's license and no existing contracts as a private investigator at the time the press release was issued. Moreover, as a first-time applicant, Plaintiff has no "legitimate claim of entitlement" to a private investigator's license. <u>See id.</u> at 577. <u>See e.g.</u>, <u>Wojcik v. City of Romulus</u>, 257 F.3d 600, 610 (6th Cir. 2001) and <u>Women's Medical Prof. Corp. v. Baird</u>, 438 F.3d 595, 611 (6th Cir. 2006) (holding that first-time license applicants have no property or liberty interest subject to procedural due process rights).

The cases cited by Plaintiff are factually distinguishable. In <u>Mertik v. Blalock</u>, 983 F.2d 1353 (6th Cir. 1993), a skating instructor filed suit against a municipality and two of its employees after they revoked her privilege to teach at a public ice rink. The instructor had been falsely accused of gross sexual imposition by a former student. Although criminal charges were brought against the instructor, they were later dismissed. Nevertheless, in connection with revoking the instructor's privilege to teach, one of the city employees made defamatory

statements to third parties concerning the alleged sexual abuse.

The instructor filed a § 1983 action against the municipality and its employees alleging a procedural due process violation. She claimed that she was entitled to notice and an opportunity to be heard before the city revoked her teaching privileges. She alleged that the defendants' conduct denied her employment opportunities and harmed her reputation. She also alleged that the defendants' conduct impaired her pre-existing teaching contracts with approximately 15 students. The Sixth Circuit recognized that "a private contractual right can constitute a property interest entitled to due process protection." Id. at 1360. It concluded that the plaintiff had "sufficiently alleged the existence of valid contracts with her students, in force at the time that she was allegedly ordered off the ice," and that these contracts constituted "a property interest deserving of protection under the Fourteenth Amendment." Id. at 1360-61.

Plaintiff also cites to Bacon v. Patera, 772 F.2d 259 (6th Cir. 1985). In that case, a private investigator who had contracted to provide security services for several restaurants filed suit against the police chief of Brunswick. The chief had cited the plaintiff on five occasions for violating a city ordinance that, according to the chief, required the plaintiff to obtain a private police officer's commission. Ultimately, it was determined that no such commission was required. Nevertheless, as a result of the citations, the plaintiff lost his security contract with one of the restaurants. He filed suit alleging that the chief had deprived him of his liberty interest in a good reputation and his right to engage in his chosen occupation.[4] Citing Paul, the Sixth Circuit found that the plaintiff had demonstrated that a protected interest was infringed because

---

[4] It does not appear that plaintiff argued that he had a protected property interest in the contracts.

11

he lost his security contract as a direct result of the chief's actions.  Id. at 263-64.

In stark contrast to the plaintiffs in Mertik and Bacon, Plaintiff in the instant case had no valid contracts in place at the time his reputation was allegedly damaged by Defendants' conduct.  In addition, as noted earlier, he has no property interest in holding public office, and no legitimate claim of entitlement to a private investigator's license.  For these reasons, the Court finds that Plaintiff has failed to allege that Defendants' conduct deprived him of any protected property interest.

### b.    Liberty Interest

The Court turns next to the question of whether Plaintiff has sufficiently alleged a violation of a protected liberty interest.  The Supreme Court has recognized that the right to engage in one's chosen occupation is a protected liberty interest subject to procedural safeguards.  Roth, 408 U.S. at 572-73.  Plaintiff's Amended Complaint alleges that the press release branding him as a "child pornographer" has deprived him of the ability to engage in his chosen profession of law enforcement.  He claims that Defendants' conduct has made it unlikely that he will ever again be elected to public office.  In his memorandum in opposition, Plaintiff also claims that he will be unable to obtain work in the private sector of law enforcement, more specifically as a private investigator.  Defendants argue that Plaintiff's alleged inability to obtain a private investigator's license is foreclosed not by the press release, but by Plaintiff's previous conviction on criminal ethics violations.  Defendants further argue that Plaintiff's claim that it is unlikely that he will ever again be elected to public office is nothing but speculation.

In the Court's view, Plaintiff's allegations are insufficient to survive Defendants' motion. Although Plaintiff has alleged the loss of *future* employment opportunities, he has failed to also

allege that Defendants' conduct caused some tangible *present* injury, such as loss of his job, as required by Paul. See Ridpath v. Board of Governors Marshall Univ., 447 F.3d 292, 309 n.16 (4th Cir. 2006) ("the Paul Court instructed that no deprivation of a liberty interest occurs when, in the course of defaming a person, a public official solely impairs that person's *future* employment opportunities, without subjecting him to a *present* injury such as termination of government employment."). As the Sixth Circuit held in Ludwig v. Board of Trustees of Ferris State University, 123 F.3d 404 (6th Cir. 1997), in order to implicate a liberty interest in one's reputation, "the stigmatizing statements must be made *in conjunction with the plaintiff's termination* from employment." Id. at 410 (emphasis added).

The Supreme Court case of Siegert v. Gilley, 500 U.S. 226 (1991), is instructive in this regard. Frederick Siegert was a clinical psychologist who, after being threatened with termination, agreed to instead resign his position at a federal hospital in Washington, D.C. He then began working at the United States Army Hospital in Bremerhaven, Germany. As part of the credentialing process, his former supervisor, Melvyn Gilley, was asked to provide information on Siegert's past job performance. Gilley wrote that he could not recommend Siegert for privileges as a psychologist because Siegert was "both inept and unethical, perhaps the least trustworthy individual I have supervised." Id. at 228.

As a result of Gilley's letter, the credentialing committee recommended that Siegert not be credentialed. Siegert was turned down for a position he sought at another Army hospital in Stuttgart, Germany, but was given provisional credentials to continue to work with adults at the hospital in Bremerhaven. His further attempts to obtain full credentials were unsuccessful and he was eventually terminated from his position in Bremerhaven. Siegert filed suit against Gilley

alleging an infringement of his liberty interests.[5]  He claimed that Gilley's letter had caused him

to lose his job in Bremerhaven and rendered him unable to obtain comparable employment as a

psychologist.

The Supreme Court held that, while Siegert might be able to bring a claim of defamation,

"[t]he facts alleged by Siegert cannot, in light of our decision in Paul v. Davis, be held to state a

claim for denial of a constitutional right."  Id. at 233-34.  The Court noted:

> The alleged defamation *was not uttered incident to the termination
> of Siegert's employment* by the hospital, since he voluntarily
> resigned from his position at the hospital, and the letter was written
> several weeks later.  The statements contained in the letter would
> undoubtedly damage the reputation of one in his position, and
> impair his future employment prospects.  But the plaintiff in Paul
> v. Davis similarly alleged serious impairment of his future
> employment opportunities as well as other harm.

Id. at 234 (emphasis added).

As the Sixth Circuit explained in Mertik, discussed above, "Siegert thus underscores two

important points: (1) a plaintiff asserting a claim for deprivation of liberty without due process

must allege the loss of a governmental right, benefit, or entitlement; and (2) the loss must occur

at the same time as the claimed stigmatizing publication."  Mertik, 983 F.2d at 1363.  See also

McMath v. City of Gary, Ind., 976 F.2d 1026, 1032 (7th Cir. 1992) ("Siegert. . . emphasized that

the publication must occur in the context of termination.").

In this case, just as in Siegert, the alleged defamation was not uttered in connection with

Plaintiff's termination.  At the time the allegedly defamatory press release was issued, Plaintiff

---

[5]  Because Gilley was a federal employee, Siegert filed suit under the authority of Bivens
v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).  A Bivens claim is the federal
counterpart to a § 1983 action.  See Powers v. Hamilton County Public Defender Comm'n, 501
F.3d 592, 610 (6th Cir. 2007).

was already unemployed, having resigned his position as Sheriff six days earlier after pleading guilty to unrelated criminal ethics charges. Based on the holding in Siegert, this forecloses a finding that Defendants' conduct implicated a protected liberty interest.

Plaintiff attempts to distinguish Siegert based on temporal proximity, noting that although *three weeks* elapsed between Siegert's resignation and the issuance of the allegedly defamatory statement, only *six days* elapsed between Plaintiff's resignation and the issuance of the allegedly defamatory press release. In the Court's view, this is a distinction without a difference. Although temporal proximity may be relevant, the fact remains that the press release was not issued *in conjunction with Plaintiff's termination*. Plaintiff was not terminated; he voluntarily resigned. Moreover, the allegations of child pornography contained in the press release that was issued six days later were completely unrelated to the reasons for Plaintiff's resignation. Under these circumstances, no protected liberty interest was implicated and Plaintiff, therefore, was not entitled to notice or a hearing.

The Court finds that, even viewing the Amended Complaint in a light most favorable to Plaintiff, Plaintiff has failed to adequately allege a procedural due process violation. Because the Court finds that Plaintiff's allegations are insufficient to state a procedural due process claim, there is no need for the Court to address Defendants' alternative argument that Plaintiff's procedural due process claim is barred by the rule set forth in Parratt v. Taylor, 451 U.S. 527 (1981), *i.e.*, that a plaintiff cannot proceed on a procedural due process claim stemming from a random and unauthorized act of a government officer absent a showing that state post-deprivation remedies are inadequate.

### 2. Substantive Due Process

The fact that Plaintiff was not entitled to notice and an opportunity to be heard does not necessarily foreclose his substantive due process claim. The substantive component of the Due Process Clause protects fundamental rights created by the Constitution of the United States. In addition, it serves "as a limitation on official misconduct which, although not infringing on a fundamental right," is so oppressive that it shocks the conscience. Howard, 82 F.3d at 1349. Defendants argue that Plaintiff's substantive due process claim must be dismissed because Plaintiff has failed to allege a violation of a fundamental right, and has failed to allege that Defendants engaged in any conduct that could be found to "shock the conscience."

### a. Fundamental Rights

Fundamental rights are those specifically guaranteed by the United States Constitution and those rights that are "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325 (1937), overruled on other grounds by Benton v. Maryland, 395 U.S. 784 (1969). These generally include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." Washington v. Glucksberg, 521 U.S. 702, 720 (1997) (internal citations omitted). Although Plaintiff summarily argues that Defendants' conduct deprived him of "his fundamental constitutional right related to marital relations and family," (Mem. in Opp'n at 1), the Amended Complaint contains no factual allegations to support such a claim. Plaintiff also argues that Defendants have infringed on his right to contract, under Ohio law, as a private investigator. Clearly, this is not a fundamental right "implicit in the concept of ordered liberty."

**b.      Shocks the Conscience**

The substantive component of the Due Process Clause also protects against official

misconduct that is so oppressive that it "shock[s] the conscience."  Valot v. Southeast Local Sch.

Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997).  As Justice Souter noted in County of

Sacramento v. Lewis, 523 U.S. 833 (1998):

> [T]he Constitution does not guarantee due care on the part of state
> officials; liability for negligently inflicted harm is categorically
> beneath the threshold of constitutional due process. It is, on the
> contrary, behavior at the other end of the culpability spectrum that
> would most probably support a substantive due process claim;
> *conduct intended to injure in some way unjustifiable by any
> government interest is the sort of official action most likely to rise
> to the conscience-shocking level.*
>
> Whether the point of the conscience shocking is reached when
> injuries are produced with culpability falling within the middle
> range, following from something more than negligence but "less
> than intentional conduct, such as recklessness or 'gross
> negligence,'" is a matter for closer calls.  To be sure, we have
> expressly recognized the possibility that some official acts in this
> range may be actionable under the Fourteenth Amendment, and
> our cases have compelled recognition that such conduct is
> egregious enough to state a substantive due process claim in at
> least one instance.

Id. at 849 (emphasis added) (internal citations omitted).

Defendants contend that "[t]here is nothing shocking or outrageous about a newly

appointed interim Sheriff announcing the discovery of child pornography on the former Sheriff's

computer and commencement of an investigation into the matter."  (Mot. Judg. Pl. at 16).

Plaintiff's Amended Complaint, however, contains numerous allegations from which it could be

inferred that, by issuing the press release, Wolfe intended to injure Plaintiff in "some way

unjustifiable by any government interest."

The Amended Complaint notes that Plaintiff had challenged Wolfe's truthfulness concerning Wolfe's qualifications for the Sheriff's position during the elections in 2000 and 2004. (Am. Compl. ¶¶ 14-15.)  The Amended Complaint also alleges that Wolfe told the Republican Central Committee that Myers had harassed him for eight years, and had a vendetta against him, as evidenced by the investigation into a complaint of voyeurism and criminal trespass filed against Wolfe in 2003.  (Id. at ¶¶ 19-20.)   It could be inferred, therefore, that there was "bad blood" between the two, and that Wolfe had a motive to retaliate against Plaintiff.

The Amended Complaint further alleges that on the same day the media reported that the Central Committee had decided not to consider Wolfe as a permanent replacement for Plaintiff, Wolfe discovered the images of child pornography on Plaintiff's computer.  (Id. at ¶ 21.)  The timing of this "discovery" could be viewed as suspect.  Plaintiff also alleges that "[p]rior to issuing the Press Release, Wolfe did not consult with employees in the Sheriff's Office, who knew that Myers had prepared a memo about his effort to pursue child pornographers.  Wolfe did not give Myers any opportunity to explain what was on Myers' computer and why it was there." (Id. at ¶ 23.)  Perhaps most importantly, Plaintiff alleges that the memo in question "was *readily available and known to Wolfe* and the other Defendants."  (Id. at ¶ 24) (emphasis added.)  This memo was given to the media the day after the press release was issued.

Finally, the Amended Complaint alleges that the defamatory press release was issued "despite advice 'in the strongest terms' from the Delaware County Prosecuting Attorney's Office not to do so.  The Defendants knew their defamatory publication was in violation of policies, procedures and directives concerning criminal investigations, and, specifically, making no public comments on a pending investigation."  (Id. at ¶ 26).

Construing the Amended Complaint in the light most favorable to Plaintiff and accepting all well-pleaded material allegations in the complaint as true, it could reasonably be inferred that Wolfe had both a motive and an intent to injure Plaintiff in a way unjustifiable by any government interest. In the Court's view, Plaintiff's allegations, if true, do state a substantive due process violation. If Wolfe knew that the child pornography found on Plaintiff's computer was, in fact, related to an official investigation and yet, against the advice of the county prosecutor, in a personal, unwarranted attack on Plaintiff's character and reputation, used his position as the county sheriff to issue a press release branding Plaintiff as a "child pornographer," such egregious conduct would, in this Court's view, shock the conscience. Such an abuse of power by a government official for the purpose of oppression rises to the level of a constitutional violation.

## B. Liability of County Defendants

Plaintiff's § 1983 claims against Delaware County, the Delaware County Board of Commissioners, the Delaware County Sheriff's Office, and against all individual defendants in their official capacities (the "County Defendants") are governed by Monell v. Department of Social Services, 436 U.S. 658 (1978). While a governmental entity may be considered a "person" for purposes of § 1983, it cannot be held liable for the acts of its employees on a *respondeat superior* theory. Id. at 691. A governmental entity may be held liable for constitutional violations only if those violations are the result of an official policy or custom. Id. at 694.[6] Defendants argue that Plaintiff has failed to allege the existence of any policy or custom

_____

[6] Because the Court has already determined that Plaintiff has failed to state a viable procedural due process claim against the individual defendants, the Court's analysis is limited to the question of whether the County Defendants can be held liable on Plaintiff's substantive due

related to the issuance of defamatory press releases, and has failed to demonstrate that Wolfe was acting pursuant to such a policy.

Plaintiff argues, however, that a single decision by a government employee with final decision-making authority with respect to the subject matter in question may suffice to establish liability under § 1983.  See Monell, 436 U.S. at 694 ("it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").  State law determines whether an employee has such final decision-making authority.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

In Ohio, "the sheriff is the chief law enforcement officer in each county."  State ex rel. Watson v. Hamilton County Bd. of Elections, 88 Ohio St. 3d 239, 244, 725 N.E.2d 255, 260 (Ohio 2000).  See also Ohio Revised Code § 311.07(A).  Decisions made by the sheriff in the discharge of his duties, in some instances, may subject the county to liability.  See Stone v. Holzberger, 807 F. Supp. 1325, 1335 (S.D. Ohio 1992); Orr v. Trumbull County, 77 F. Supp. 2d 853 (N.D. Ohio 1999); Culberson v. Doan, 125 F. Supp. 2d 252 (S.D. Ohio 2000).  Plaintiff argues that Sheriff Wolfe is the final policymaker with respect to the criminal investigation into the child pornography found on Plaintiff's computer, and that his decision to issue the press release in connection with that investigation therefore subjects the County Defendants to liability under § 1983 for the alleged substantive due process violation.

_____

process claim.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding that absent a constitutional violation, municipal liability cannot exist).

Citing <u>Hubbard v. City of Middletown</u>, 782 F. Supp. 1573 (S.D. Ohio 1990), Defendants argue in their reply brief that even if Wolfe had final decisionmaking authority under state law with respect to issuing the press release, Plaintiff's claim fails because he has not demonstrated that Delaware County officially sanctioned or ordered the issuance of the press release.

The Court agrees that, under the circumstances presented here, Plaintiff's allegations are insufficient to subject the County Defendants to liability. Although the sheriff is the chief law enforcement officer in the county, Ohio law also provides that the sheriff may seek the advice of the county prosecutor in matters connected with official duties. <u>See</u> Ohio Revised Code § 309.09(A). In <u>Pembaur</u>, the sheriff's office sought and followed the advice of the county prosecutor concerning the question of whether force could be used to serve capiases on employees of a medical clinic. The Supreme Court noted that the Court of Appeals had found that, under Ohio law, "both the County Sheriff and the County Prosecutor could establish county policy under appropriate circumstances." 475 U.S. at 484. In <u>Pembaur</u>, the Court concluded that because the county prosecutor was acting as the final decisionmaker, the county could be held liable for the alleged constitutional violation. <u>Id.</u> at 485.

In contrast, in this case, Wolfe allegedly acted *contrary* to the advice of the prosecuting attorney, the chief legal advisor for the county. Plaintiff alleges that Defendants issued the defamatory press release "despite advice 'in the strongest possible terms' from the Delaware County Prosecuting Attorney's Office not to do so." (Am. Compl. ¶ 26.) Plaintiff further alleges that "[t]he Defendants knew their defamatory publication was in violation of policies, procedures and directives concerning criminal investigations, and, specifically, making no public comments on a pending investigation." (<u>Id.</u>)

In City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988), the Supreme Court held that when an official's discretionary decisions are constrained by other pre-existing policies, the official's departure from those policies cannot be considered an act of the municipality. See also Pembaur, 475 U.S. at 486 (White, J., concurring) (noting that officials have no authority to make policy contrary to controlling law); Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir. 1993) (holding that a municipal employee is a final decisionmaker if "the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials.")

In the Court's view, because Defendants' discretionary decision to issue the press release was contrary to established county policies that forbid the sheriff from making public comments on a pending investigation, and because Defendants acted contrary to the legal advice of the county prosecutor, the conduct in question cannot be attributable to Delaware County regardless of whether Defendants were the final policymakers with respect to matters of law enforcement. The Court therefore finds that the County Defendants are entitled to judgment on the pleadings with respect to Plaintiff's substantive due process claim.

## C.     Legislative Immunity

Ohio Revised Code § 305.02(F) provides that if a vacancy occurs in the sheriff's office, the board of county commissioners may appoint a person as an acting officer to perform the duties of that office until a permanent successor takes office. Pursuant to this statute, the three Delaware County Commissioners, by unanimous vote, appointed Mark Wolfe as acting Sheriff on May 31, 2007. Plaintiff has alleged that the appointment of Wolfe was "done with the intent and purpose of depriving Plaintiff of his due process rights of liberty and property." (Am. Compl. at ¶ 43). Commissioner Ward, the only County Commissioner sued in his individual

capacity, argues that because the vote in question was a "legislative act," he is entitled to absolute legislative immunity on this portion of Plaintiff's due process claim.

In Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998), the Supreme Court held that "[l]ocal legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." The Court further held that "[w]hether an act is legislative turns on the nature of the act." Id. In Bogan, the plaintiff filed suit after the city council passed an ordinance eliminating the department in which she was the sole employee. Defendants argued that they were entitled to legislative immunity. The Court agreed, finding that:

> the ordinance, in substance, bore all the hallmarks of traditional legislation. The ordinance reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents. Moreover, it involved the termination of a position, which, *unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office.* And the city council, in eliminating DHHS, certainly governed "in a field where legislators traditionally have power to act." *Tenney, supra,* at 379, 71 S.Ct., at 789. Thus, petitioners' activities were undoubtedly legislative.

Id. at 55-56 (emphasis added).

Plaintiff argues that because the County Commissioners' act of appointing Wolfe as acting Sheriff is akin to a hiring decision that has no prospective implication that reaches beyond Wolfe himself, this case is distinguishable from Bogan. The Court agrees. Courts interpreting Bogan have widely concluded that when local legislators' employment actions are directed at a specific individual and impact no one but that individual, the action is considered to be administrative and not legislative. See, e.g., Canary v. Osborn, 211 F.3d 324, 330-31 (6th Cir. 2000); Campana v. City of Greenfield, 38 F. Supp. 2d 1043, 1049-50 (E.D. Wis. 1999); Smith v.

Lomax, 45 F.3d 402, 405 (11th Cir. 1995); Dunleavy v. Wayne County Commission, No. 04-cv-74670-DT, 2006 WL 1134417 (E.D. Mich. April 25, 2006) (collecting cases).

Defendants argue that because the appointment of an interim sheriff affects the public at large, whom the sheriff is sworn to protect, this case is somehow different than those cases cited by Plaintiff. The Court sees no distinction. Every individual hiring decision by a governmental entity indirectly affects the public at large. As the Supreme Court noted in Bogan, the question of whether an act is legislative turns on the nature of the act. 523 U.S. at 54. In this case, the appointment of Wolfe as acting Sheriff had no permanent implications for the Sheriff's position in general. The Commissioners were simply fulfilling their statutory obligation to fill an open position. Because the appointment affected only Wolfe, it must be considered administrative in nature. For these reasons, the Court concludes that Commissioner Ward is not entitled to absolute legislative immunity for his conduct in appointing Mark Wolfe as acting Sheriff.

### D.      Qualified Immunity

Defendants Wolfe and Ward also argue that they are entitled to qualified immunity on the claims filed against them in their individual capacities. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

The Sixth Circuit has adopted a two-step analysis to determine whether qualified immunity is available. First, the court must ask "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated." Second, the court

must ask "whether that right was clearly established." Dorsey v. Barber, 517 F.3d 389, 394 (6th Cir. 2008) (quoting Estate of Carter v. City of Detroit, 408 F.3d 305, 310-311 (6th Cir. 2005)). If the answer to either question is "no," the defendant is entitled to qualified immunity. Once a defendant raises the qualified immunity defense, the burden is on the plaintiff to prove that the defense does not apply. Id. Defendants contend that they are entitled to qualified immunity because Plaintiff has not alleged the violation of any constitutionally-protected interest, and because the right at issue was not clearly established.

For the reasons previously discussed, the Court finds that, viewing the facts in the light most favorable to Plaintiff, Defendants' conduct violated Plaintiff's Fourteenth Amendment substantive due process right. The only remaining question is whether the contours of that right were clearly established. See Dorsey, 517 F.3d at 394. In Culberson v. Doan, 125 F. Supp. 2d 252, 278 (S.D. Ohio 2000), the court noted that "the right to recover for injuries due to law enforcement conduct that 'shocks the conscience' [has] been clearly established in this Circuit for many years." Nevertheless, as the Supreme Court explained in Anderson v. Creighton, 483 U.S. 635, 640 (1987), "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Defendants contend that, even if they should have known that their conduct in issuing the press release might give rise to a claim of defamation, there was no reason for them to believe that their conduct would violate Plaintiff's constitutional due process rights. The Court disagrees.

It does not appear that there are any controlling cases directly on point. However, as the Supreme Court noted in Anderson, it is not necessary that "the very action in question has previously been held unlawful." It is enough if the unlawfulness of the action is apparent in the

light of pre-existing law.  Id.  See also United States v. Lanier, 520 U.S. 259, 271 (1997) ("a

general constitutional rule already identified in the decisional law may apply with obvious clarity

to the specific conduct in question, even though 'the very action in question has [not] previously

been held unlawful.'").

In Stemler v. City of Florence, 126 F.3d 856 (6th Cir. 1997), the Sixth Circuit discussed

the difficulties inherent in determining whether substantive due process rights are clearly

established for purposes of qualified immunity.  In Stemler, a young woman was killed in a car

accident shortly after police officers ordered her to get in the car with an intoxicated man who

had beaten her earlier that evening.  Her estate filed suit under § 1983 alleging substantive due

process violations.  The district court concluded that the police officers were entitled to qualified

immunity on plaintiff's substantive due process claims.

On appeal, the Sixth Circuit reversed.  It noted that the district court "appeared to reason

that, since the doctrine of substantive due process was unclear in its entirety, no such claim could

ever survive a motion to dismiss on the ground of qualified immunity."  Id. at 866.  The Sixth

Circuit held:

> While, as we will see below, there is a good deal of uncertainty
> with regard to the precise contours of substantive due process, it
> does not follow that state actors are insulated from liability on all
> such claims, no matter what the underlying facts may be. The fact
> that the law may have been unclear, or even hotly disputed, at the
> margins does not afford state actors immunity from suit where
> their actions violate the heartland of the constitutional guarantee,
> as that guarantee was understood at the time of the violation.

 Id. at 867.  The Sixth Circuit concluded that "[t]he very notion that police officers should not

have known that they could not force an incapacitated woman to drive off with an obviously

drunk man who they had reason to believe had beaten her betrays a chilling and unacceptable

vision of the role of the police in our society. In short, these facts support a substantive due process claim under law that was clearly established in 1994, and we are therefore obliged to reverse the dismissal of her complaint against the individual officers." Id. at 870.

As in Stemler, this Court believes that this is one of those cases in which the unlawfulness of the alleged conduct is apparent despite the fact that no court has specifically held so. The Supreme Court has expressly held that substantive due process rights are implicated when a government official engages in conduct intentionally designed to injure in some way unjustifiable by any government interest. Lewis, 523 U.S. at 849. A government official cannot abuse his power in order to oppress someone or to retaliate against him. These general constitutional principles were clearly established at the time the press release was issued. In the Court's view, no reasonably competent official would have believed that it was constitutional to issue a press release falsely accusing a political rival of being a child pornographer. For these reasons, the Court determines that Defendants are not entitled to qualified immunity on Plaintiff's substantive due process claim.[7]

### E.    Pendent State Claims

Defendants also moved to dismiss Plaintiff's pendent state law claims, noting that when a district court dismisses all of the pending federal claims, it is generally advisable to decline to exercise supplemental jurisdiction over the state law claims. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). In this case, however, because Plaintiff's substantive due process claim survives the pending motion to dismiss, and because Defendants have not moved

---

[7] The Court makes no determination, at this point, as to whether Defendants are entitled to qualified immunity on Count I of the Amended Complaint, the First Amendment retaliation claim.

to dismiss Count I of the Amended Complaint, the § 1983 First Amendment retaliation claim, dismissal of the supplemental state law claims is not appropriate at this stage of the litigation.

IV.     **Conclusion**

For the reasons stated above, Defendants' motion for judgment on the pleadings (Record at 25) is **GRANTED IN PART and DENIED IN PART**.  The Court **DISMISSES** Plaintiff's § 1983 procedural due process claim, and the substantive due process claim brought against the County Defendants.  Plaintiff's substantive due process claim against Sheriff Wolfe and Commissioner Ward in their individual capacities remains pending.  Plaintiff's First Amendment retaliation claim and the pendent state law claims also remain pending.

**IT IS SO ORDERED.**


Date: November 7, 2008                              **/s/ John D. Holschuh**
                                                    John D. Holschuh, Judge
                                                    United States District Court