# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ALFRED K. MYERS, | : | |
| Plaintiff, | : | Case No. 2:07-cv-844 |
| v. | : | Judge Holschuh |
| DELAWARE COUNTY, OHIO, et al., | : | Magistrate Judge Kemp |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

Former Delaware County Sheriff Al Myers filed suit against Delaware County and numerous Delaware County officials in their official and individual capacities, seeking relief under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights. He also asserted a state law claim of defamation. This matter is currently before the Court on the County Defendants' motion for partial judgment on the pleadings.[1] (Doc. 36). They seek dismissal of the First Amendment claim and the defamation claim.

## I. Background and Procedural History

Plaintiff served as Sheriff of Delaware County, Ohio from 1993 until May 31, 2007 when he resigned after pleading guilty to criminal ethics charges involving the receipt of improper off-duty compensation and the selling of county vehicles through a family member. He was sentenced on June 1, 2007 to 60 days of suspended jail time and fined $800. He was also ordered to perform community service and was prohibited from holding public office for seven years.

---

[1] The County Defendants include Delaware County, Delaware County Board of Commissioners, Delaware County Sheriff's Office, and Kris Jordan, Glenn Evans, James Ward and Mark Wolfe in their official capacities.

The Delaware County Board of Commissioners (consisting of Defendants Kris Jordan, Glenn Evans, and James Ward) appointed Defendant Mark W. Wolfe to replace Plaintiff as Acting Sheriff. There was a history of political tension between Plaintiff and Wolfe, and between Plaintiff and Ward. In the past, Wolfe and Ward had both unsuccessfully run against Plaintiff for the position of Delaware County Sheriff, and Plaintiff had publicly challenged Wolfe's qualifications. Wolfe held the position as Acting Sheriff for just one week. The Delaware County Republican Central Committee screened several candidates, including Wolfe. On June 5, 2007, the local newspaper reported that the Republican Central Committee had determined that Wolfe was not qualified and would not be considered as a permanent replacement for Sheriff.

That same day, Wolfe found images of child pornography on the office computer previously used by Plaintiff. On June 6, 2007, acting against the strong advice of the Delaware County Prosecutor, Wolfe issued a written press release detailing his "horrific discovery" and stating that an official investigation was being conducted. The press release stated that "[i]t appears that the files located on this computer were not used in an investigatory nature." (Ex. to Compl.). News of Wolfe's discovery was widely reported throughout the media.

The following day, the media received a copy of a 2003 memo written by Plaintiff indicating that the child pornography on his computer was related to an official investigation. Plaintiff contends that this memo was readily available and known to Wolfe before the press release was issued. On July 2, 2007, the media reported that the Ohio Bureau of Criminal Investigation had concluded that the child pornography found on the computer was, in fact, related to an official investigation.

2

On August 23, 2007, Plaintiff filed the instant action against Delaware County, the Delaware County Sheriff's Office, and the Delaware County Board of Commissioners. Plaintiff also sued Commissioners Jordan and Evans in their official capacities, and sued Ward and Wolfe in their official and individual capacities. Count I of the Amended Complaint, brought pursuant to 42 U.S.C. § 1983, alleges that Defendants, while acting under color of state law, retaliated against Plaintiff for exercising his right to free speech under the First Amendment. Count II of the Amended Complaint also seeks relief under § 1983; it alleges that Defendants, acting under color of state law, violated Plaintiff's due process rights. Count III of the Amended Complaint asserts a state law claim of defamation. Count IV further alleges that Defendants acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Plaintiff seeks compensatory and punitive damages.

On November 7, 2008, the Court issued a Memorandum Opinion and Order granting in part Defendants' motion for partial judgment on the pleadings with respect to Count II of the Amended Complaint. Pursuant to Federal Rule of Civil Procedure 12(c), the Court dismissed Plaintiff's § 1983 procedural due process claim in its entirety, and dismissed the substantive due process claim brought against the County Defendants. The County Defendants have now filed a second motion for partial judgment on the pleadings, seeking dismissal of Plaintiff's First Amendment claim and his defamation claim.

**II.     Standard of Review**

Motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) are evaluated in much the same way as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. See Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998); Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 511-12 (6th Cir. 2001); Mixon v. Ohio, 193

3

F.3d 389, 399-400 (6th Cir. 1999). The purpose of a motion under either rule is to test the sufficiency of the complaint.

A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("A formulaic recitation of the elements of a cause of action" is not enough). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)(emphasis in original).

When considering a motion for judgment on the pleadings, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Grindstaff, 133 F.3d at 421. However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. Id. Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949-50. The factual allegations must show more than a possibility that the defendant acted unlawfully. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 1949 (quoting Twombly, 550 U.S. at 557). The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. See Fitzke

4

v. Shappell, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

The Court will grant a motion for judgment on the pleadings if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. Little v. UNUM Provident Corp., 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

### III.   Analysis

#### A.   First Amendment Retaliation Claim (Count I)

Count I of the Amended Complaint seeks relief pursuant to 42 U.S.C. § 1983 for an alleged violation of Plaintiff's First Amendment right to freedom of speech. Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. This statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)). In order to recover under § 1983, a plaintiff must prove that the defendant, while acting under color of state law, violated rights secured by the Constitution or laws of the United States. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Here, Plaintiff alleges that because he criticized the Delaware County government or its officials during previous elections, Defendants, acting under color of state law, retaliated against him by issuing the press release containing the allegations of child pornography,

5

thereby violating his First Amendment rights.

The County Defendants argue that Plaintiff's First Amendment claim must be dismissed for the same reasons set forth in this Court's November 7, 2008 Memorandum Opinion and Order. In that Order, the Court granted Defendants' motion for judgment on the pleadings with respect to portions of Count II of the Amended Complaint, in which Plaintiff sought relief under § 1983 for violations of his Fourteenth Amendment procedural and substantive due process rights. The Court dismissed the procedural due process claims in their entirety, but found that Plaintiff's allegations concerning the substantive due process violations were generally sufficient to withstand the motion.

The Court did, however, dismiss the substantive due process claim against the County Defendants. As the Court noted then, Plaintiff's § 1983 claims against the County Defendants are governed by Monell v. Department of Social Services, 436 U.S. 658 (1978).[2] While a governmental entity may be considered a "person" for purposes of § 1983, it cannot be held liable for the acts of its employees on a *respondeat superior* theory. Id. at 691. A governmental entity may be held liable for constitutional violations only if those violations are the result of an official policy or custom. Id. at 694. In some instances, a single decision by a government official with final decision-making authority with respect to the subject matter in question may equate to an official policy, thereby subjecting the government entity to liability. Id. at 694; Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).

---

[2] As the Supreme Court noted in Kentucky v. Graham, 473 U.S. 159, 165-66 (1985), a claim brought against a government employee in his or her *official* capacity is the equivalent of a claim brought against the governmental entity itself.

Plaintiff had argued that Wolfe was the final decision-maker with respect to the criminal investigation into the child pornography found on Plaintiff's computer, and that Wolfe's decision to issue the press release therefore subjected the County Defendants to liability. The Court, however, held that because Wolfe acted contrary to the legal advice of the county prosecutor, and contrary to established county policies that forbid the sheriff from making public comments on a pending investigation, Wolfe's conduct could not subject the County Defendants to liability. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (holding that when an official's discretionary decisions are constrained by other pre-existing policies, the official's departure from those policies cannot be considered an act of the municipality); Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir. 1993) (holding that a municipal employee is a final decisionmaker only if "the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials.").

In this case, the conduct giving rise to the substantive due process claim and the conduct giving rise to the First Amendment claim, *i.e.*, the issuance of the press release, is identical. The Court has already held that, under the circumstances presented here, the County Defendants cannot be held liable for Wolfe's conduct. Therefore, the County Defendants argue that, logically, the Court must also dismiss the First Amendment claim. The County Defendants also argue that the law-of-the-case doctrine requires dismissal. The law-of-the-case doctrine precludes reconsideration of an issue that was decided in a previous stage of litigation, "either explicitly or by necessary inference from the disposition." Hanover Ins. Co. v. American Eng'g Co., 105 F.3d 306, 312 (6th Cir. 1997) (internal quotation omitted); Arizona v. California, 460 U.S. 605, 618 (1983).

Plaintiff appears to argue that an exception to the law-of-the-case doctrine might apply. A court may reconsider its previous ruling if "a subsequent contrary view of the law is decided by a controlling authority." Burrell v. Henderson, 483 F. Supp.2d 595, 599 (S.D. Ohio 2007) (citing McKenzie v. BellSouth Telecomm. Inc., 219 F.3d 508, 513 n. 3 (6th Cir. 2000)). Plaintiff notes that after the Court issued its November 7, 2008 Memorandum Opinion and Order, the Sixth Circuit issued a decision in Crosby v. Pickaway County General Health District, 303 F. Appx. 251 (6th Cir. 2008). In Crosby, the Health District suspended its prior approval of sewage system permits for two lots in a subdivision. The landowners sued the county, the county commissioners, and the county health district under § 1983 alleging violations of their constitutional rights. The district court granted defendants' motion for summary judgment and the landowners appealed.

With respect to liability of the county and the commissioners, the court noted that plaintiffs could establish liability by identifying "either: (1) a direct causal link that would confer direct liability on the County and Commissioners; or (2) action on the part of municipal employees that amount [sic] to a 'final policy' that promoted or condoned constitutional wrongs." Id. at 256. The court found no direct causal link between the Health District and the other defendants. Id. Plaintiffs argued, in reliance on Pembaur, that these defendants were nevertheless liable because the Health District relied on the advice given by the county prosecutor. The court rejected this argument, finding that Pembaur was clearly distinguishable. In Pembaur, the county prosecutor was the final decision-maker with respect to the question of whether force could properly be used in executing certain arrest warrants. 475 U.S. at 472-73. In contrast, the county prosecutor in Crosby acted only as a legal advisor to the Health District. The Health District relied on that advice, but retained its decision-making authority. Id. at 257-58. Therefore, neither the county nor the commissioners

8

could be the source of any official policy. Id. at 259.

In his memorandum in opposition, Plaintiff argues that, in this case, there is a direct link that would confer liability on the county and the commissioners. The Court disagrees. Plaintiff alleges that the commissioners appointed Wolfe as the interim sheriff, even though they knew he was unqualified, because they knew that he would do whatever they wanted him to do. Plaintiff then argues that the appointment of Wolfe was the "moving force" behind the alleged First Amendment violation, *i.e.*, the issuance of the press release. But as the County Defendants point out, Plaintiff has never alleged that the commissioners knew that Wolfe would find child pornography on Plaintiff's computer, or that they directed Wolfe to issue the press release in question. Under these circumstances, it cannot be said that the commissioners' act of appointing Wolfe as interim sheriff was the moving force behind the alleged constitutional violation. The alleged link is simply too attenuated.

Plaintiff also argues that, like the county prosecutor in Crosby, the county prosecutor here was simply rendering legal advice when he instructed Wolfe not to issue the press release. Plaintiff argues that because Wolfe retained final decision-making authority, Wolfe's conduct in issuing the press release is sufficient to subject the County Defendants to liability. In making this argument, Plaintiff ignores the crux of this Court's November 7, 2008 decision. Regardless of whether Wolfe was the final decision-maker with respect to the issuance of the press release, Wolfe acted *contrary* to the advice of the county prosecutor and *contrary* to established policies regarding making public comments on pending criminal investigations. The Court held that, under these particular circumstances, the County Defendants were not liable for his conduct. The Crosby decision simply does not speak to this issue.

9

For the same reasons articulated in this Court's November 7, 2008 Memorandum Opinion and Order, the County Defendants are entitled to dismissal of Plaintiff's First Amendment claims.

## B. Defamation Claim (Count III)

Count III of the Amended Complaint asserts a state law claim of defamation. Plaintiff alleges that, in issuing the press release stating that the child pornography found on his computer did not appear to be linked to an official investigation, Defendants acted with actual malice -- that is, with knowledge that it was false, or with reckless disregard as to its falsity. Plaintiff alleges that his reputation was permanently tainted as a result.

At issue is whether the County Defendants are entitled to statutory immunity on Plaintiff's defamation claim. Ohio Revised Code § 2744.02(A)(1) provides that, with certain exceptions, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

Plaintiff argues that statutory immunity is not available because Chapter 2744 does not apply to "[c]ivil actions by an employee . . . against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision." Ohio Revised Code § 2744.09(B). Plaintiff impliedly acknowledges that he was no longer employed by Delaware County at the time the allegedly defamatory statements were made. He nevertheless notes that, for purposes of Chapter 2744, the term "employee" also includes "a person who has been convicted of or pleaded guilty to a criminal offense and who has been sentenced to perform community service work in a political subdivision whether pursuant to section 2951.02 of the Revised Code or otherwise . . ." Ohio Revised Code § 2744.01(B). Plaintiff maintains that because

10

he pleaded guilty to a criminal offense and was sentenced to perform community service work, he meets the statutory definition of "employee." For purposes of the pending motion, the Court need not resolve the issue of whether Plaintiff is an "employee" for purposes of § 2744.09(B). Assuming *arguendo* that Plaintiff falls within the statutory definition, the County Defendants are entitled to dismissal of the defamation claim for another reason.

As the Ohio Supreme Court explained in Brady v. Safety-Kleen Corporation, 61 Ohio St.3d 624, 634, 576 N.E.2d 722, 729 (Ohio 1991), employer intentional torts cannot be said to arise out of the employment relationship. Therefore, if Plaintiff's defamation claim constitutes an intentional tort, the exception to statutory immunity set forth in § 2744.09(B) -- which requires that the claim arise out of the employment relationship -- does not apply. See Wilson v. Stark Cty. Dep't of Human Servs., 70 Ohio St.3d 450, 452, 639 N.E.2d 105, 107 (Ohio 1994) (holding that political subdivisions are immune from liability from intentional tort claims); Williams v. McFarland Properties, LLC (2008), 177 Ohio App.3d 490, 2008-Ohio-3594, 895 N.E.2d 208, at ¶ 11 (same).

Under Ohio law, defamation claims "may be either negligent or intentional, depending on the context." Price v. Austintown Local Sch. Bd. of Educ. (2008), 178 Ohio App.3d 256, 2008-Ohio-4514, 897 N.E.2d 700, at ¶ 25. In this case, Plaintiff, quite understandably, does not allege negligent conduct. As the former Delaware County Sheriff, and a "public figure," he must prove that Defendants acted with "actual malice" in issuing the allegedly defamatory press release. See Scaccia v. Dayton Newspapers, Inc. (2007), 170 Ohio App.3d 471, 2007-Ohio-869, 867 N.E.2d 874, at ¶ 6 (citing New York Times Co. v. Sullivan, 376 U.S. 254 (1964)). Plaintiff, in fact, alleges that Defendants acted "with actual malice, that is Defendants knew that the statement that Plaintiff Al Myers was a child pornographer was false, or was made with reckless disregard of whether it was

11

false or not. Defendants had a high degree of awareness of the probable falseness, or serious doubts to the truth." (Am. Compl. ¶ 48).

Because Plaintiff's defamation claim is in the nature of an intentional tort, and because political subdivisions are statutorily immune from intentional tort claims, dismissal of this claim against the County Defendants is proper. See Price at ¶ 1.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** the County Defendants' motion for judgment on the pleadings with respect to Counts I and III of the Amended Complaint. (Doc. 36). Those claims, however, remain pending against Defendants Wolfe and Ward in their individual capacities, as does Plaintiff's substantive due process claim as set forth in Count II of the Amended Complaint.[3]

**IT IS SO ORDERED.**

Date: October 22, 2009

**/s/ John D. Holschuh**
John D. Holschuh, Judge
United States District Court

---

[3] The Court notes that Defendant Ward, in his individual capacity, has recently moved for summary judgment. That motion is not yet ripe for decision.